# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES E. TURNAGE,** | ) |
| | ) |
|     **Claimant,** | ) |
| | ) |
| vs. | )    **Civil Action No. 5:18-CV-2127-CLS** |
| | ) |
| **DR. MARK T. ESPER, Secretary,** | ) |
| **U.S. Department of the Army,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

James Turnage is an African-American civilian employee of the United States Army at Redstone Arsenal in Huntsville, Alabama, who filed a *pro se* complaint against the Secretary of the Army for alleged violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*.[1]  Defendant moved to dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Upon consideration of the motion, briefs, plaintiff's complaint, and the attachments to the complaint, the court concludes the motion should be granted in part and denied in part.

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a

---

[1] *See* doc. no. 1 (Complaint) and doc. no. 1-1 (Attachments to Complaint).

complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alterations supplied).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff completed and filed a complaint form for *pro se* litigants, but the attachments to the complaint contain the substance of his allegations. Accordingly, the court will consider both the complaint form and the attachments in evaluating the

viability of plaintiff's claims.[2]

Between May 14, 2007 and March 10, 2014, plaintiff served as a General Engineer at pay grade "DB-0801-04" for the Army's Aviation and Missile Research, Development and Engineering Center at Redstone Arsenal.[3] He complains about four employment decisions the Army made during that time period:

> Incident A: During May 2007, he became aware that he was not selected for a canvassed Supervisory (DB-0801-04) position located in the Air and Missile Defense Branch located in the Production Engineering Division within the Engineering Directorate;
>
> Incident B: During January 2008, he became aware that he was not selected for a canvassed Supervisory (DB-0801-04) position located in the Aviation Branch located in the Production Engineering Division within the Engineering Directorate;
>
> Incident A [*sic:* "C"]: On or about March 4, 2013, he became aware that he was not selected for a canvassed Supervisory General Engineer (DB-0801-04) position located in the Production Engineering Division within the Engineering Directorate; and,
>
> Incident D: On or about March 19, 2014, he was non-selected for a canvassed Supervisory General Engineer (Platform Branch Supervisor, DB-0801-04) position located in the Production Engineering Division within the Engineering Directorate.

Doc. no. 1-1, at ECF 2 (alteration supplied). The term "canvassed" means that the Army sent an e-mail advertising the job opening to all current, qualified employees,

---

[2] The court can consider the attachments to plaintiff's complaint without converting the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

[3] Doc. no. 1-1, at ECF 2.

which, for the positions described above, included all engineers at the DB-04 level.[4] None of the canvassed positions involved a promotion to a higher pay grade, but the Army awarded supervisory engineers at the DB-04 level a ten-percent pay-differential over non-supervisory DB-04 engineers.[5] The Army selected white males who, plaintiff, alleges, were less qualified than he for all of the positions described above.[6]

Mike Lawrence, a white male Supervisory General Engineer at the DB-0801-04 grade level, was plaintiff's second-level supervisor between 2007 and 2014, on the dates of all of the contested employment decisions.[7] After plaintiff interviewed for the 2014 position, Lawrence assigned him a score of 70 out of 100. Lawrence awarded the position to an white male applicant who received an interview score of 83. Plaintiff alleges that his 2014 interview score was racial evidence of discrimination, because he had received higher scores on the interviews for the 2007, 2008, and 2013 positions (*i.e.,* 81, 83, and 84, respectively).[8]

Plaintiff contacted Redstone Arsenal's Equal Employment Opportunity ("EEO") Office on April 1, 2014, and filed a formal EEO complaint on June 19, 2014. The Army attempted mediation and held a fact-finding conference on November 7, 2014.[9]

---

[4] *Id.* at ECF 3.
[5] *Id.*
[6] *Id.* at ECF 4.
[7] *Id.* at ECF 3.
[8] *Id.* at ECF 5.
[9] Doc. no. 1-1, at ECF 3, 5, 52-53.

Plaintiff was not satisfied with the results of those proceedings, however, and so he requested and received a hearing before an EEO Administrative Judge.[10] The Administrative Judge found in favor of the Army, and that decision was affirmed on administrative appeal.[11]

Plaintiff received a "reassignment email" on March 30, 2015.[12] He also received a formal memorandum on June 23, 2015, informing him that he would be reassigned, effective July 12, 2015.[13] He attached to his complaint an undated memorandum regarding the reassignment, but it is not clear whether that attachment is the March 30 email or the June 23 memorandum referenced in the complaint. In any event, the attachment states:

> Due to the Joint Attack Munitions Systems (JAMS) Project Management Office (PMO) determination that there is inadequate senior level DB-IV work to support a DB-IV Team Leader and a senior DB-IV as part of the team, it is necessary to reassign you from the JAMS PMO to the PD TMDE to support the Test Equipment Modernization Program. This action will be effective 12 Jul 2015. You will report to Mr. Ben Martin as your immediate supervisor [and Senior Rater]. You will work with him to develop performance objectives within 30 days of your reassignment. *Your job title, series, grade and pay will not change*.

---

[10] *Id.* at ECF 3, 5. This court's record contains no information regarding the timing of the hearing, except that the Administrative Judge held a scheduling conference on May 27, 2015. *Id.* at ECF 5.

[11] *Id.* at ECF 3, 5. This court's record does not specify the dates of the Administrative Judge's decision or the administrative appellate decision.

[12] *Id.* at ECF 5. The record does not contain a copy of this email or provide any additional information about its contents.

[13] *Id.* at ECF 5-6.

Doc. no. 1-1, at ECF 64 (alteration and emphasis supplied). The Administrative Judge assigned to adjudicate plaintiff's first EEO complaint "would not allow the plaintiff to combine a second EEO [complaint alleging retaliation based upon the reassignment] with the first one," citing "convolution and 'falling behind with these things' for his reason."[14] Instead, the Administrative Judge advised plaintiff to file a new EEO complaint, which plaintiff did on August 17, 2015. He claimed that the Army reassigned him to the Test Equipment Modernization Program in retaliation for his first EEO complaint.[15] Plaintiff's second complaint was resolved in favor of the Army on October 6, 2016.[16] Plaintiff appealed that decision, and his administrative appeal was denied on an unspecified date.[17]

The Office of Federal Operations of the United States Equal Employment Opportunity Commission informed plaintiff on September 26, 2018, of his right to file a federal civil suit arising out of both his administrative complaints within ninety days of receiving notice.[18] The notice form stated that "the Commission will presume that

---

[14] *Id.* at ECF 5-6 (alteration supplied).

[15] Doc. no. 10-1, at ECF 5-6, 55-57. Plaintiff states that he filed his second EEO complaint on August 17, *2017*, but the face of the complaint clearly reveals a filing date of August 17, *2015*. *Id.* at ECF 56. The court will consider the 2017 reference to be a typographical error and will assume August 17, 2015 as the filing date of the second EEOC complaint.

[16] *Id.* at ECF 7.

[17] *Id*.

[18] *Id.* at ECF 3, 14-17.

7

this decision was received within five (5) calendar days after it was mailed."[19] Plaintiff filed this case on December 28, 2018, ninety-three days after the Army mailed the notice.[20]

Plaintiff's complaint contains seven counts. He labels them all as asserting claims for negligence, but most of the claims do not actually sound in negligence. Instead, he asserts claims for discrimination based upon the Army's failure to select him for the four supervisory positions.[21] He also asserts that the Army subjected him to a racially hostile work environment[22] and retaliated against him for filing EEO complaints.[23] The remainder of his claims assert deficiencies in the EEO investigative process.[24]

### III. DISCUSSION

---

[19] *Id.* at ECF 17.

[20] Doc. no. 1 (Complaint).

[21] Doc. no. 1-1, at ECF 4-5 (Count 2), and 6-7 (Count 5).

[22] *Id.* at ECF 4 (Count 1), ECF 5 (Count 3).

[23] *Id.* at ECF 5-6 (Count 4).

[24] *See id.* at ECF 4 (Count 1) (complaining that, after plaintiff sent an informal complaint of hostile work environment to the Associate Director of the Engineering Directorate on April 27, 2013, and met with unspecified members of the leadership team to address the complaint on May 1, 2013, the Army did not take any further action or provide him with any feedback until March of 2014); ECF 6-7 (Count 5: "**The Defendant has failed to recognize the 'elephant' in the room that has continued to live strongly within in AMRDEC and now has adversely impact[ed] the career of the Plaintiff.**") (emphasis in original, alteration supplied); ECF 7 (Count 6: "**The Defendant failed to accept and embrace the findings and subsequently provide corrective actions for the systemic problems cited in the IR's [*i.e.,* investigative reports] of the plaintiff.**") (emphasis in original, alteration supplied); ECF 7 (Count 7: "**The Defendant failed to resolve the complaint of the plaintiff in a timely and just manner. This failure has adversely affected the career of the Plaintiff.**") (emphasis in original).

8

Plaintiff abandoned his claims for retaliation and defects in the administrative process by failing to address defendant's arguments that those claims should be dismissed. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the only remaining claims are for a racially hostile work environment and race-based disparate treatment discrimination.

A.  **Hostile Work Environment**

To support a claim for a race-based hostile work environment, plaintiff must show that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based upon his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatory abusive working environment; and (5) defendant is responsible for such environment under a theory of either vicarious or direct liability. *E.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The factual basis for plaintiff's hostile work environment claim is that defendant did not select him for leadership positions in 2007, 2008, 2013, and 2014.[25] Those discrete employment actions cannot, on their own, form the basis of a harassment or hostile work environment claim. *See Gowski v. Peake*, 682 F.3d 1299, 1312-13 (11th Cir. 2012) ("Discrete acts cannot alone form the *basis* of a hostile work environment

---

[25] *Id.* at ECF 4 (Count 1), ECF 5 (Count 3).

claim.") (emphasis in original) (citing *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 970 (11th Cir. 2008); *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (in turn quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002))). Plaintiff has not pled any other facts to support the existence of a "'workplace [that] is permeated with discriminatory intimidation, ridicule, and insult, [and] that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Miller*, 277 F.3d at 1275 quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)) (alterations supplied).[26] Accordingly, this court will dismiss his hostile work environment claims.

## B. Disparate Treatment Discrimination

### 1. 2007, 2008, and 2013 positions

Plaintiff's claims for disparate treatment discrimination based upon his race related to the 2007, 2008, and 2013 positions cannot succeed because plaintiff did not timely exhaust his administrative remedies for those claims. *See Crawford v. Babbitt,* 186 F.3d 1322, 1326 (11th Cir. 1999) (citing *Brown v. General Services Administration,* 425 U.S. 820, 832-33 (1976)) ("A federal employee must pursue and exhaust [his] administrative remedies as a jurisdictional prerequisite to filing a Title

---

[26] In fact, plaintiff acknowledged in his response brief that "[n]o evidence was presented [before the EEO office] to indicate a pattern of discriminatory intimidation, ridicule, and insult." Doc. no. 13 (Objection to the Motion to Dismiss and Brief in Support Thereof), at 7 (alterations supplied).

VII action.") (alteration supplied). A federal employee who believes he has been the victim of discrimination must initiate contact with the relevant EEO office "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Plaintiff initiated contacted with the Redstone Arsenal EEO office on April 1, 2014.[27] Only the employment decision made on March 19, 2014, falls within 45 days of his initial contact. Accordingly, all other claims are time-barred.

2. **2014 position**

Plaintiff asserts that defendant's failure to select him on March 19, 2014, for the position of Supervisory General Engineer and Platform Branch Supervisor within the Production Engineering Division of the Engineering Directorate was the result of race discrimination. Plaintiff also claims that the position would have constituted a promotion, even though it was at the same pay grade he previously occupied, because he would have received a ten percent pay differential as a supervisor.

To succeed on his failure-to-promote claim, plaintiff must show that: (1) he belongs to a protected class; (2) he "applied for and was qualified for a promotion"; (3) he "was rejected despite [his] qualifications"; and (4) "other equally or less-qualified employees outside [his] class were promoted." *Brown v. Alabama Department of Transportation*, 597 F.3d 1160, 1174 (11th Cir. 2010) (citing *Wilson*

---

[27] Doc. no. 1-1, at ECF 3.

*v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)) (alterations supplied). Plaintiff's complaint and its attachments contain sufficient allegations to support all of the required elements. He is African-American;[28] he applied for the position;[29] he met the basic qualifications because he already served at the DB-4 level;[30] and, his application was rejected in favor of an allegedly less-qualified white applicant.[31] Accordingly, plaintiff's claim for race discrimination with regard to the 2014 position will survive defendant's motion to dismiss.

## IV. CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss will be granted in part and denied in part. Plaintiff's claim for race discrimination in defendant's failure to select him for the position of Supervisory General Engineer, Platform Branch Supervisor, in March of 2014 will remain pending. All other claims will be

---

[28] *Id.* at ECF 2 (alleging discrimination "because of his race (African-American)").

[29] It appears that the "canvassing" process may not require the submission of a formal application. *See id.* at ECF 3 ("Though not competitive in nature, the canvassing process has a competitive aspect, such as review of resumes and interviewing the interested candidates. The 'ED' [Engineering Directorate] requires canvassing for reassignments to high-level positions.") (alteration supplied). It is not disputed that plaintiff took all the required steps to express his interest in the position, so the court will assume that he "applied" for purposes of pleading his claim, even though he may not have submitted a formal application.

[30] *See id.* at ECF 2 (stating that plaintiff was "employed as a General Engineer, DB-0801-04. . . ."), ECF 3 (stating that "qualified personnel" for the 2014 position (and the other positions) included "those at the DB-04 level").

[31] *See id.* at ECF 2 (stating that plaintiff was "non-selected" for the 2014 position), 3 ("Once the plaintiff began looking at the colleagues assigned to the supervisory positions, he realized that the common theme was that white men were chosen to fill the positions. He knew that he was more qualified than the white males selected.").

dismissed. An appropriate order will be entered contemporaneously herewith.

DONE this 12th day of July, 2019.

_____
United States District Judge